861 F.2d 714
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MINUTEMAN TRANSIT, INC., d/b/a Tennessee Delivery Systems,
Inc.; D.V. Leasing, Inc.; C.C.S. Inc., d/b/a
Baken Delivery Services; Roscoe Jordan,
Plaintiffs- Appellees,
v.
CAMPBELL-TAGGERT, INC.; Merico, Inc.; Dean Burger,
Defendants-Appellants.
MINUTEMAN TRANSIT, INC., d/b/a Tennessee Delivery Systems,
Inc., Plaintiff- Appellant,
and
D.V. Leasing, Inc.; C.C.S. Inc., d/b/a Baken Delivery
Services; Roscoe Jordan, Plaintiffs,
v.
CAMPBELL-TAGGERT, INC.; Merico, Inc.; Dean Burger,
Defendants-Appellees.
 Nos. 87-3617, 87-3623.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 10, 1988.
Decided: Oct. 11, 1988.
 
 Charles E. Johnson (James C. Smith; Moore & Van Allen, on brief), for appellants.
 Isham Faison Hicks (William L. Rikard, Jr.; Parker, Poe, Thompson, Bernstein, Gage & Preston; Leslie J. Winner; Ferguson, Stein, Watt, Wallas & Adkins, P.A., on brief), for appellees.
 Before JAMES DICKSON PHILLIPS and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This appeal is largely a conglomeration of factual disputes that this appellate court is unauthorized to resolve. In the district court there was a trial before a jury that found that the defendant had broken a contract between the parties and awarded damages to the plaintiff in the sum of $367,225.00. Nevertheless, the parties on this appeal largely reiterate positions they took in the district court. The defendant's principal contention on appeal is that a letter written by the plaintiff to the defendant on March 7, 1985, was a repudiation of the contract or an anticipatory breach that excused further performance by the defendant.
 
 
 2
 The jury's computation of damages was based upon a provision in the contract for liquidated damages, and, interestingly, on appeal, each side contends that the liquidated damages provision is inapplicable or unenforceable and that the award should have been based upon ordinary principles of contract law.
 
 
 3
 In light of the jury's verdict, we must take the facts from the evidence viewed in the light most favorable to the verdict. So viewed, we reject the defendant's primary claim of anticipatory breach and affirm the judgment entered upon the verdict.
 
 I.
 
 4
 The defendant, Merico, operates a bakery in Charlotte, North Carolina, where it is engaged in the baking of buns for hamburgers that it sells to Burger King restaurants in the southeastern portion of the United States. In the spring of 1984, it entered into negotiations with Minuteman, a contract carrier of commodities by truck. They finally agreed upon a contract under which Minuteman was to design and operate a "dedicated delivery system" for the delivery of buns from the defendant's bakery to Burger King restaurants. Because the parties had no experience in the actual operation of such a delivery system for hamburger buns, the terms of the contract were far from explicit, and many terms were left for later agreement or negotiation.
 
 
 5
 The plaintiff provided specially designed trucks for the delivery of buns from the defendant's bakery to many Burger King restaurants in North and South Carolina and, later, to other such restaurants in the southeast. It is clear that the plaintiff contemplated that such trucks would be operated upon fixed routes and schedules, successively dropping off shipments of buns to Burger King restaurants along each predetermined route.
 
 
 6
 The plaintiff designed such a system, but, almost from the outset, the plaintiff complained that the defendant was frustrating operation of the system as designed by the plaintiff. It began to complain to the defendant about such things as scheduling shipments and an extension of the time required to effect deliveries to individual restaurants. It contended that the delivery of buns to it for carriage was inconsistent with the operation of a dedicated delivery system. Moreover, some of the Burger King restaurants, suspicious of the quality of the defendant's buns, insisted upon intensive inspection of shipments before the delivery was accepted and the plaintiff's truck permitted to depart. It contended that the defendant, in effect, was converting the arrangement into a demand and response system that was much more expensive for plaintiff to operate than a dedicated delivery system, operating on predetermined routes with successive deliveries to stores along each route.
 
 
 7
 The plaintiff's complaints were met by assurances from the defendant that things would be worked out, and the plaintiff protected, but by March 1985 the plaintiff viewed the situation as hopeless.
 
 
 8
 On March 7, 1985 plaintiff wrote a letter to the defendant in which it offered (1) to operate a delivery system in accordance with one of the provisions in the contract with some adjustments in prices, or (2) to provide a demand and response delivery service at substantially greater cost to the defendant.
 
 
 9
 The defendant promptly rejected the proposal and put the plaintiff's employees off its premises. At the same time, it gave notice of termination of the contract effective on the first anniversary of the contract, June 1, 1985. Notwithstanding the termination notice, there was no utilization of plaintiff's delivery service after defendant's response to plaintiff's letter of March 7, 1985.
 
 II.
 
 10
 Before the jury, there was sharp disagreement between the parties as to whether or not Minuteman's letter of March 7, 1985 was an anticipatory breach of the contract. The plaintiff stoutly contended that it was not, because the defendant was already in breach of the contract, and that the defendant had substantially frustrated the contract's intention and converted it into a demand and supply arrangement. The jury was told by the trial judge that an anticipatory breach "would entitle the other party to call the whole thing off." The jury's verdict was in agreement with the plaintiff's contention, and the plaintiff had offered substantial evidence to support it. We think the jury's verdict foreclosed the defendant's anticipatory breach contentions on appeal.
 
 III.
 
 11
 At the plaintiff's insistence, a liquidated damages provision had been included in the contract. It was a four-year contract with rights of termination, but the contract provided that if the defendant terminated the contract during the first year it would pay to the plaintiff, as liquidated damages, 30 per cent of the first year's billings. The liquidated damages clause also called for payment to the plaintiff of ten per cent of the second year's billings if the defendant terminated the contract after the second year.
 
 
 12
 The jury's verdict was computed by taking 30 per cent of the first year's actual billings for services performed by the plaintiff until the defendant rejected further performance in March 1985.
 
 
 13
 We do not think the liquidated damages clause was an unenforceable penalty. At the outset, the plaintiff was required to make a substantial investment in equipment with which to perform the delivery services. If the contract proved to be short-lived, the plaintiff could not recover its capital costs. There was testimony that the provision for the 30 per cent of first year's billings was based upon an earnest effort to forecast capital losses upon a termination in the first year. We do not think it reasonably can be held to have been an unenforceable penalty.
 
 
 14
 The clause, of course, is ambiguous. There was a contention that the contract was not "terminated," but "broken", and there was a contention that the computation should have been based upon estimated billings for the full 12-month period beginning with the startup of the service, while the jury's verdict was based upon actual billings for services actually rendered in a shorter period.
 
 
 15
 There are no clear signs along the way to guide our judgment, and substantially the entire problem was left for determination by the jury.
 
 
 16
 One might find fault with whatever the jury did, but what it did was not irrational and produces a result that is not inequitable.
 
 
 17
 We think the district court properly accepted the jury's verdict and entered judgment upon it.
 
 
 18
 AFFIRMED.